UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EMAD AMIN; JUDY MENCZER, on behalf of E.M., a
minor; SYLVIA FABELO; LIAM BECK, on behalf of
M.B., a minor; MARTHA RIVAS; ICHO COHEN,
on behalf of S.C., a minor; JESSICA VALLADARES;        **COMPLAINT**
JOSHUA RYLAND; CONSTANTIN KEHAYA; MYRNA
MERCEDES ALVAREZ; and ARON BRAVER, on behalf of
R.B., a minor,                                          2015 CV
                     Plaintiffs,

           -against-

CAROLYN W. COLVIN, Acting Commissioner of Social
Security, and FRED M. MAURIN, Regional Commissioner
of Social Security, New York Region,

                 Defendants.
------------------------------------------------------------------------X

      Plaintiffs, by their attorneys, allege as follows:

## PRELIMINARY STATEMENT

1.    Plaintiffs or their minor children are recipients of benefits from the Social

Security Administration ("SSA") under the Social Security Act's ("Act") Supplemental Security

Income for the Aged, Blind, and Disabled ("SSI") program. SSI recipients depend on SSI

benefits for food, shelter, and other necessities of life. SSI benefits are extremely modest. For

example, a person living alone in New York State in 2015 could receive a maximum of $820 a

month. When SSI benefits are suspended, reduced, or terminated, recipients face irrevocable

harm in the form of hunger, rent and utility arrears, and loss of medical coverage. Even a small

reduction in SSI benefits can be the difference between maintaining a delicate financial

equilibrium and facing hunger, eviction proceedings, and homelessness.

2.    A recipient determined by SSA to be ineligible for continued SSI benefits or to

have received an overpayment of benefits can appeal the determinations by filing a Request for

Reconsideration ("reconsideration request") or a Request for Waiver of Overpayment Recovery ("waiver request") or both.

3.  When a recipient files either kind of appeal request, SSA is supposed to capture this data by documenting the request in its system, called the Modernized Supplemental Security Income Claims Systems ("MSSICS"). If a reconsideration request is timely made and documented in the MSSICS, then the recipient has the right to have SSI benefits continue pending the appeal. If a waiver request is timely made and documented in the MSSICS, then the recipient has the right to have her SSI benefits continued without reductions in subsequent months while the appeal is pending.

4.  SSA offices in New York City intentionally and negligently fail to document reconsideration requests and waiver requests in the MSSICS in sufficient time to avoid reduction or termination of recipients' SSI benefits.

5.  If a reconsideration request or waiver request is not properly documented in the MSSICS, the recipient loses the valuable right to have benefits maintained in full pending appeal.

6.  In fact, when SSA determines that a recipient has been overpaid, it immediately schedules an automatic reduction or termination of benefits to start the following month. This automatic change is scheduled without regard to a recipient's right to appeal or to maintain ongoing benefits.

7.  The United States Supreme Court, in *Goldberg v. Kelly*, 397 U.S. 254 (1970), held that the basic elements of due process require that public assistance recipients receive advance notice of a proposed adverse action and an effective opportunity to defend by confronting witnesses and presenting arguments and evidence before the adverse action is taken.

"Thus, the crucial factor in this context … is that termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate." 397 U. S. at 265.

8.     When SSA fails to (1) timely document reconsideration requests and waiver requests in the MSSICS or (2) when it immediately schedules the automatic reduction or termination of SSI benefits, the agency violates the most basic due process protections provided under the Due Process Clause in the Fifth Amendment to the United States Constitution as well as its own regulations and procedures.

9.     Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), declaring (a) that SSA's practice and policy of intentionally and negligently failing to ensure that SSA offices in New York City in fact documented plaintiffs' or their children's timely reconsideration requests and waiver requests in the MSSICS in a timely manner in order to prevent the unlawful reduction or termination of plaintiffs' or their children's SSI benefits, violated their due process rights, the Act, and SSA's regulations and procedures; and (b) that SSA's practice and policy of allowing its offices in New York City to immediately schedule the automatic reduction or termination of SSI benefits violates plaintiffs' or their children's due process rights, the Act, and SSA's regulations and procedures.

10.     Plaintiffs seek injunctive relief, pursuant to 28 U.S.C § 2202 and Rule 65 of the Fed. R. Civ. P.,: (a) enjoining SSA from allowing its offices in New York City to fail to document reconsideration requests and waiver requests in the MSSICS; (b) directing SSA to implement a practice and policy to ensure that its offices in New York City in fact document

reconsideration requests and waiver requests in the MSSICS in order to prevent the reduction or termination of SSI benefits; (c) enjoining SSA from allowing its offices in New York City to immediately schedule the automatic reduction or termination of  SSI benefits; and (d) enjoining SSA from allowing its offices in New York City to reduce or terminate SSI benefits without first allowing recipients a meaningful right to be heard.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331 for questions arising under the Constitution and the laws of the United States.

12.     This Court has subject matter jurisdiction under 42 U.S.C. § 405(g) for the collateral procedural issue of whether the SSA in New York City affords plaintiffs or their children appropriate regulatory and due process safeguards prior to reducing or terminating their SSI benefits. In the circumstances of this case, it would be futile for them to exhaust their administrative remedies because the available remedies would not provide the procedural safeguards they should have received prior to SSA's actions to reduce or terminate their SSI benefits.  Should SSA determine in the future that any plaintiff or their child is ineligible or was overpaid SSI benefits, SSA will utilize the same practices and policies challenged in this lawsuit, leading the plaintiff or their child to suffer irreparable harm.

13.     Plaintiffs reside in the New York State counties of Kings, Queens, or New York. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and 1391(e).

## PARTIES

**Plaintiffs**

14.     Plaintiff Emad Amin ("Mr. Amin") resides at 360 63rd Street, Apt. 3R, Brooklyn, New York 11220.

15.    Mr. Amin receives SSI benefits based on his disability and poverty.

16.    Plaintiff Judy Menczer ("Ms. Menczer") is suing on behalf of her minor child, E.M.

17.    Ms. Menczer and E.M. reside at 115 Lorimer Street, Apt. 2A, Brooklyn, New York 11206.

18.     E.M. receives SSI benefits based on her disability and her family's poverty.

19.    Plaintiff Sylvia Fabelo ("Ms. Fabelo") resides at 572 Amsterdam Avenue, Apt. 2, New York, New York 10024.

20.    Ms. Fabelo is over 65 years of age and receives SSI benefits based on her age and poverty.

21.    Plaintiff Liam Beck ("Mr. Beck") is suing on behalf of his minor child, M.B.

22.    Mr. Beck and M.B. reside at 1337 45th Street, Brooklyn, New York 11219.

23.    M.B. receives SSI benefits based on her disability and her family's poverty.

24.    Plaintiff Martha Rivas ("Ms. Rivas") resides at 41-25 Case Street, Apt. 1C, Elmhurst, New York, 11373.

25.    Ms. Rivas is 59 years of age and receives SSI benefits based on her disability and poverty.

26.    Plaintiff Icho Cohen ("Mr. Cohen") is suing on behalf of his minor child, S.C.

27.    Mr. Cohen and S.C. reside at 2245 East 19th Street, Apt. 3G, Brooklyn, New York 11229.

28.    S.C. receives SSI benefits based on her disability and her family's poverty.

29.    Jessica Valladares ("Ms. Valladares") resides at 34-33 43rd Street, Apt. 1R, Long Island City, New York 11101.

30. Ms. Valladares receives SSI benefits based on her disability and poverty.

31. Joshua Ryland ("Mr. Ryland") resides at 4005 College Point Boulevard, Apt 9E, Flushing, New York 11354.

32. Mr. Ryland receives SSI benefits based on his disability and poverty.

33. Constantin Kehaya ("Mr. Kehaya") resides at 625 West 140th Street, Apt. 7K, New York, New York 10031.

34. Mr. Kehaya is over 65 years of age and receives SSI benefits based on his age and poverty.

35. Myrna Mercedes Alvarez ("Ms. Alvarez") resides at 60-32 71st Avenue, Ridgewood, New York 11385.

36. Ms. Alvarez receives SSI based on her disability and poverty.

37. Plaintiff Aron Braver ("Mr. Braver") is suing on behalf of his minor child, R.B.

38. Mr. Braver and R.B. reside at 70 Morton Street, Brooklyn, New York 11249.

39. R.B. receives SSI benefits based on his disability and family's poverty.

**Defendants**

40. Defendant Carolyn W. Colvin, as the acting Commissioner of Social Security, has full power and responsibility to ensure that the SSI program is administered in compliance with the United States Constitution, the Act, and SSA regulations, policies, and procedures. She is being sued in her official capacity.

41. Defendant Fred W. Maurin, as the Regional Commissioner for SSA's New York Region, which includes New York City, has full power and responsibility to ensure that SSA's local offices in New York City comply with the United States Constitution, the Act, and SSA regulations, policies, and procedures.  He is being sued in his official capacity.

42.     The defendants are collectively referred to as SSA.

**STATUTORY, REGULATORY, AND PROCEDURAL SCHEME**

43.      "The basic purpose underlying the [SSI] program is to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110. "[P]ayments are made under conditions that are as protective of people's dignity as possible." 20 C.F.R. § 416.110(c).

44.     SSA stores and maintains data concerning claimants for or recipients of benefits in a federal electronic database. The SSA computer system includes various storage subsystems including the Supplemental Security Master Record ("SSR"), the MSSICS, and the notice retrieval system. Created in May 1992, the MSSICS stores financial eligibility information obtained from SSI applicants.  MSSICS was designed as an on-line computer system available to SSA workers during interviews with claimants or recipients so that SSA workers can view data on file and add data to the file. Further, MSSICS stores data obtained from claimants or recipients during interviews to evaluate initial and ongoing SSI eligibility.

45.     While the MSSICS does not itself perform any of the computations necessary to assess eligibility or determine benefits, it employs a separate software program to perform such calculations and feeds the results back to the MSSICS so that SSA workers can view the results of new information added to the MSSICS.

**Reconsideration Requests**

46.     Federal rules allow SSI recipients to challenge a finding of improperly paid SSI benefits by filing a reconsideration request.

47.     SSI benefits are paid based on numerous factors such as living arrangements, income, and resources. 20 C.F.R. §§ 416.1100, 416.1201 and 416.1210.

48.     SSA follows the rules and guidelines contained in its regulations and procedures to determine if an SSI recipient no longer meets the income or resource criteria for SSI. 20 C.F.R. §§ 416.1320 – .1340.

49.     If SSA believes an SSI recipient is no longer financially eligible for benefits, SSA must provide the recipient with advance written notice of its intent to suspend or terminate benefits. The recipient may appeal the determination of a suspension or termination within 60 days by filing a reconsideration request. 20 C.F.R § 416.1336.

50.     If SSA believes an SSI recipient was overpaid benefits but remains financially eligible, SSA must provide the recipient with advance written notice of its intent to reduce ongoing benefits. 20 C.F.R. § 416.535. The notice must explain, in simple and clear language, SSA's determination and the reasons for the overpayment. 20 C.F.R. § 416.558 and SSA Program Operations Manual System ("POMS") SI 02201.025. The recipient may appeal an overpayment determination within 60 days by filing a reconsideration request. 20 C.F.R. § 416.1413b.

51.     20 C.F.R. § 416.1404 provides assurance that, "If our initial determination is that we must suspend, reduce or terminate your benefits, the notice will also tell you that you have a right to a reconsideration before the determination takes effect (see § 416.1336)."

52.      Any writing or timely submission of additional evidence by the recipient after receipt of an initial determination notice that clearly implies a disagreement with that determination constitutes a reconsideration request. POMS SI 04020.020.

53.     If a reconsideration request objecting to the initial determination is filed, SSA must review the case and issue a written notice of its reconsidered determination. 20 C.F.R. §§ 416.1413 and 416.1422.

54.     If a reconsideration request is filed within 15 days[1] of the date of the notice, SSI benefits should remain unchanged pending review of the reconsideration request and written notice of SSA's determination. 20 C.F.R. § 416.1336(b); POMS SI 02301.300.  For recipients facing termination of their SSI benefits, this means that their benefits will not terminate.  For recipients facing recoupment or a reduction in their SSI benefits, this means that their benefits will not be reduced.

55.     Further, recipients facing a reduction in benefits who file a request for reconsideration within the 60-day time period are entitled to have recoupment stopped pending a determination on the reconsideration request. POMS SI 02220.017.

**Waiver Requests**

56.     Federal rules allow an SSI recipient to challenge a repayment requirement for allegedly overpaid benefits.

57.     If SSA believes an SSI recipient was overpaid but remains financially eligible for benefits, the recipient may also request that the full recovery of the overpayment be waived by filing a waiver request. 20 C.F.R. § 416.550.

58.     SSA will waive an overpayment of benefits if: "(a) [t]he overpaid individual was without fault in connection with an overpayment, and (b) [a]djustment or recovery of such overpayment would either: (1) [d]efeat the purpose of title XVI, or (2) [b]e against equity and

---

[1]     Whenever SSA sends any notice, it assumes that the notice was received within 5 days, unless otherwise proven. For example, a recipient has 15 days to appeal a 10-day notice. 20 C.F.R. §§ 416.1336(b) and 416.1401. In addition, SSA can extend the time to request a reconsideration.  20 C.F.R. § 416.1409(b).

good conscience, or (3) [i]mpede efficient or effective administration of title XVI due to the small amount involved." 20 C.F. R. § 416.550.  See also 42 U.S.C. § 1383(b) and 20 C.F.R. §§ 416.552–.554**.**

59.     42 U.S.C. § 1383(b)(1) specifically directs the Commissioner of Social Security to recover overpayments from individuals "with a view to avoiding penalizing such individual or his eligible spouse who was without fault in connection with the overpayment."

60.     Waiver of an overpayment "frees" the overpaid person from the obligation to repay.  20 C.F.R. § 416.551.

61.     A waiver request can be filed at any time. Receipt of the waiver request stops overpayment recovery in the month SSA receives the written waiver request. POMS SI 02260.001.  Recovery should not commence, or, if has begun, should stop, unless SSA issues a determination denying the waiver request.

62.     If SSA determines that full recovery cannot be waived, then SSA can adjust ongoing benefits to recoup the overpaid benefits. 20 C.F.R. § 416.570.  This means that SSA can adjust ongoing benefits *only after* it determines that a waiver is not applicable.  20 C.F.R. § 416.570(a).

**Constitutional and Federal Law Framework**

63.     The Fifth Amendment to the United States Constitution provides that "No person shall … be deprived of life, liberty, or property, without due process of law."

64.     The Declaratory Judgment Act ("DJA") states that a federal court "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable

as such." 28 U.S.C. § 2201(a). The DJA also permits further necessary relief based on a declaratory judgment, such as injunctive relief. 28 U.S.C. § 2202.

## STATEMENT OF FACTS

**Background**

65.     Like public assistance recipients, SSI recipients must meet financial eligibility requirements, which place them substantially below the federal poverty level.

66.     SSI recipients, by definition, confront the challenges of disabling illness, blindness, or advanced age. This makes the proper and timely implementation of SSA's due process, regulatory, and procedural protections even more crucial. An SSI recipient's loss of the only means of financial support portends a loss of stable housing, insufficient food, and discontinuance of utilities. In addition, termination of SSI benefits can lead to the loss of health care benefits. Many recipients face increased uncertainty, anxiety, and fear. Many require additional medication, therapy, and sometimes hospitalization. For parents with disabled children, SSI benefits can be a financial lifeline that allows them to procure necessary educational and support services. SSI benefits, like public assistance, are "not mere charity, but a means to promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity. The same governmental interests that counsel the provision of welfare, counsel as well its uninterrupted provision to those eligible to receive it." *Goldberg*, 397 U.S. at 265.

**Agency Failure to Follow Rules to Process Overpayment Appeals**

67.     In New York City, SSA routinely disregards the rules in place that would allow SSI recipients to exercise their due process rights, namely the rights to object to a planned action to reduce or terminate SSI benefits prior to SSA's taking the action.

68.     SSA workers in New York City routinely instruct SSI recipients that the best method for submitting a reconsideration request or waiver request is in person at the recipient's local SSA office.

69.     Submission of reconsideration requests and waiver requests in person is only one of several methods recipients can utilize.   Other methods include submission by mail or by facsimile.

70.     Recipients cannot submit reconsideration requests or waiver requests over the Internet.

71.     SSA workers in New York City routinely instruct SSI recipients that reconsideration requests and waiver requests can only be submitted on SSA forms (SSA's Request For Reconsideration form (SSA-561) or Request For Waiver Of Overpayment Recovery Or Change In Repayment Rate form (SSA-632)) and that SSA is unable to accept attachments with the forms, including supporting evidence.

72.     However, SSA will not grant a reconsideration request or waiver request unless the recipient submits sufficiently strong objections to the proposed action with evidence to support the recipient's argument.

73.     On many occasions, when a reconsideration request form or waiver request form is proffered in person, the recipient is told by an SSA worker in New York City that the recipient does not have a good reason to appeal the determination and then the SSA worker refuses to accept the proffered form.

74.     On one notable occasion, an SSA worker in New York City tore up the form and threw it in the waste paper basket in front of the recipient.

75.     A vast majority of reconsideration requests and waiver requests must be submitted two or more times in SSA offices in New York City before SSA workers document the requests in the MSSICS.

76.     The timely submission of a reconsideration request or waiver request has the dual impact of stopping a pending action (reduction or termination of benefits) and triggering significant due process, statutory, and regulatory rights. However, none of these protections are triggered until an SSA worker actually documents a reconsideration request or waiver request in the MSSICS.

77.     However, SSA currently lacks a system to ensure that timely written reconsideration requests and waiver requests are in fact documented in the MSSICS in sufficient time to prevent the reduction or termination of SSI benefits. If the reconsideration requests and waiver requests are not documented in the MSSICS in a timely manner, then the due process, statutory, and regulatory protections are not triggered. As a result, benefits are reduced or terminated despite the timely filing of a request.

**SSA Automatically Reduces or Terminates SSI Benefits**

78.     At the same time SSA issues a notice of intent to reduce or terminate SSI benefits, it immediately schedules an automatic reduction or termination of SSI benefits for the next month.

79.     SSA uses this automatic scheduling function as an administrative convenience.

80.     The scheduled reduction or termination is supposed to take effect fifteen days after the issuance of the notice.

81.     SSA must take an affirmative step to stop the automatic reduction or termination of SSI benefits.  If the reconsideration request or waiver request is not documented in the

MSSICS quickly enough, then the automatic reduction or termination of benefits takes effect. Further, even if SSA takes an affirmative step to stop the automatic reduction or termination, the scheduled reduction or termination will go forward regardless if SSA acts mid-month or later in a calendar month.

**Documentation of Violations**

82.     From 2014 to 2015, in a significant number of cases at 16 local SSA offices in New York City, the New York Legal Assistance Group ("NYLAG") documented SSA's failure to enter reconsideration requests into the MSSICS in a timely manner, which would have prevented the suspension, reduction, or termination of SSI benefits.

83.     Out of 24 SSI suspension or termination reconsideration requests filed, 17 had to be submitted more than once before SSA workers documented the request in the MSSICS.

84.     In SSI overpayment cases, where the underlying overpayment itself was in dispute, out of 27 reconsideration requests filed, 10 had to be submitted more than once before SSA workers documented the requests in the MSSICS. Generally, repeated telephone calls had to be made to ensure that the reconsideration requests were found and then documented in the MSSICS, so that benefits were continued.

85.     Often, despite advocacy, benefits were not continued and the recipient only received the withheld benefits after a favorable determination had been made on the reconsideration request.

86.     From 2014 to 2015, in a significant number of cases at 15 local SSA offices in New York City, NYLAG tracked SSA workers' failure to timely document waiver requests in the MSSICS.

87.     For overpayment cases, out of 41 waiver requests filed, 19 had to be submitted more than once. Generally, repeat telephone calls were necessary to ensure that the waivers were found and documented in the MSSICS.

88.     In one case, the waiver request was submitted only once but six follow up telephone calls had to be made over a three-week period until the waiver request was finally found and documented in the MSSICS.

89.     In one case, an SSA worker refused to accept a waiver request form that was submitted in person because, in his opinion, a prior reinstatement had not been warranted.

90.     In another case, the recipient attempted to file a completed waiver request at an SSA appointment on a separate issue. But the SSA worker refused to accept the proffered waiver request and told her to schedule another appointment to submit the waiver request.

91.     Generally, many follow up telephone calls occurred to ensure that the recoupment was stopped pending a determination on the waiver request.

92.     Often, despite advocacy, the recoupment continued unchanged and the recipient only received the withheld benefits after the waiver request had been granted.

**Plaintiff Emad Amin**

93.     Mr. Amin has been receiving SSI benefits since 2012 due to a heart condition and a work-related injury. His local SSA office is the Boro Hall Office in Brooklyn, New York.

94.     In March 2015, when Mr. Amin's wife and three children were finally able to join him in the United States from Egypt, they had to move into a larger apartment whose rent was more than his monthly SSI benefits. His wife immediately began searching for work. In the meantime, Mr. Amin's application for public assistance and food stamps for his family was delayed.

95.     In April 2015, Mr. Amin's SSI benefits were terminated without notice due to SSA's erroneous belief that he had unstated income, which SSA based solely on the increase in his rent.

96.     On May 8, 2015, a reconsideration request was filed stating that he did not have unstated income and, in fact, was in rent arrears due to the loss of his SSI benefits and difficulties accessing public assistance. The reconsideration request included a request for continued SSI benefits pending a determination by SSA.

97.     Mr. Amin's representative submitted the reconsideration request two more times, visited the local SSA office to submit the information in person once, and placed nine telephone calls to the local SSA office.

98.     A personal conference was not scheduled until June 25, 2015, and Mr. Amin's SSI benefits were not reinstated until June 30, 2015. At that time, he received withheld benefits for June and July but not for May.

99.     Mr. Amin did not receive his SSI benefits for May until August 3, 2015, after his representative had to make four more telephone calls to the local SSA office.

100.    This was a very stressful time for Mr. Amin because he did not have money with which to purchase necessities for himself, his wife, and their children. The rent arrears on the new apartment mounted. He has high blood pressure; he was always anxious. He had to borrow money from a friend to survive and had to max out his credit card. In addition, he fell behind on his electricity and gas payments and now owes utility arrears.

101.    Such harm would have been avoided if SSA had timely documented his reconsideration request in the MSSICS and provided SSI benefits unchanged while a determination on Mr. Amin's request for reconsideration was pending. SSA terminated Mr.

Amin's SSI benefits without notice and then failed to provide continued benefits pending the outcome of his appeal, leaving the newly reunited family of five destitute.

**Plaintiff Judy Menczer, on behalf of her minor child, E.M.**

102.    E.M. is a disabled 13-year-old girl who lives with her parents and five siblings. Her local SSA office is the Bushwick Office in Brooklyn, New York.

103.    An SSA bank data match for the family brought up three bank accounts: an account for E.M.'s SSI benefits, a joint account owned by her parents, and a business account owned by her uncle.

104.    The business account is not a countable resource under SSA regulations because her father's name is on the business account in order to access it for business purposes.

105.    In 2012, E.M.'s SSI benefits were terminated and an overpayment was posted to her SSI record until SSA accepted all the business account documents. This took nine months, from the date of the notice to the final resolution.

106.    In 2014, E.M.'s SSI benefits were terminated and an overpayment was posted to her SSI record because of the same business account. That took five months to resolve.

107.    In 2015, for the third time, E.M.'s SSI benefits were terminated and an overpayment was posted to her SSI record because of the same business account. The first SSA notice was dated August 5, 2015, and a reconsideration request was sent by facsimile to SSA that same day with a request for continued benefits under SSA's *Goldberg v. Kelly* provisions. The second notice, which added additional months to the overpayment, was dated August 6, 2015, and within 15 days a reconsideration request was sent by facsimile to SSA with a request for continued benefits.

108.    On August 17, 2015, supporting documentation, including bank statements and an advocacy letter were mailed to SSA with the two previously submitted reconsideration requests.

109.    On August 20, 2015, SSA received the documentation, bank statements, and advocacy letter. The next day an SSA worker stated that it was not in the computer system but it "might be on someone's desk." Two more follow up telephone calls were made to the local SSA office without response.

110.    E.M. did not receive her SSI benefits for September 2015, despite the timely reconsideration request, so another telephone call was placed to the local SSA office. The worker stated that she did not "see" any appeal on file in the MSSICS. A request for continued benefits was made again but SSA took no action. A week later, a notice scheduling a personal conference was received but benefits were still not restored pending the appointment. At the September 18, 2015, personal conference, the issue was apparently resolved once again in E.M.'s favor. However, by notice dated October 7, 2015, the reconsideration request was denied. On October 16, 2015, a request for hearing was filed.

111.    To date, E.M.'s SSI benefits have not been restored, despite the timely filing of the reconsideration request on the same day the termination notice was received. SSA's repeated terminations of E.M.'s SSI benefits every year for the same reason and its failure to document in the MSSICS timely reconsideration requests caused and continues to cause  this family increased stress and significant financial instability.

**Plaintiff Sylvia Fabelo**

112.    Ms. Fabelo has been in receipt of SSI benefits since 2013, when she turned 65 years of age. Her local SSA office is the Midtown Office in New York, New York.

113.    In September 2014, Ms. Fabelo began receiving foster care benefits for her grandson.

114.    Under the SSI program, foster care benefits are considered exempt income.

115.    On January 15, 2015, Ms. Fabelo attended an SSI recertification appointment at her local SSA office and provided information about the foster care benefits. She was told to provide additional proof of the source of the benefits by January 30, 2015. On January 30, 2015, Ms. Fabelo returned to her local SSA office with a letter from the foster care agency documenting the exempt income; however, she was told that the letter was insufficient evidence and she was turned away at the check-in window. SSA provided no additional information about what would constitute sufficient documentation.

116.    Ms. Fabelo did not receive any advance notice that she would not receive her SSI benefits in February 2015.

117.    On February 17, 2015, Ms. Fabelo received a notice of termination that indicated her SSI benefits had been terminated as of February 1, 2015, and that she had been overpaid from September 2014 to January 2015.

118.    On March 20, 2015, Ms. Fabelo's representative filed a reconsideration request with Ms. Fabelo's local SSA office objecting to the termination.

119.    Her representative contacted Ms. Fabelo's local SSA office seven times by telephone, from April 1, 2015, to May 4, 2015, to obtain information regarding the reconsideration request. Despite these telephone calls, the reconsideration request was never processed and Ms. Fabelo was not provided with continuing benefits.

120.    On May 5, 2015, Ms. Fabelo's representative accompanied her to the local SSA office. At the appointment, the SSA worker requested additional information from the foster care

agency, which was promptly submitted. Ms. Fabelo's representative contacted the office three times by telephone, from May 14, 2015, to May 18, 2015, to check on the status of the case. On May 19, 2015, a favorable reconsideration decision was issued.

121.    On May 27, 2015, Ms. Fabelo's SSI benefits were finally reinstated but she was not issued the benefits withheld for February, March, and April 2015. On June 16, 2015, her representative again contacted the local SSA office and was told that SSA had kept the withheld benefits to pay back an old overpayment — all without notice. Due to her representative's advocacy, the missing benefits were released on June 24, 2015, and the old overpayment began to be recouped at a rate of 10% per month.

122.    Ms. Fabelo's only source of income is her SSI benefits, which she relies upon to pay all her living expenses. During the period she did not receive her SSI benefits (February 2015 to May 2015), her daughter had to loan her money to pay her rent. She also fell behind in paying her electricity and telephone bills. Such harm would have been avoided had SSA timely documented the reconsideration request in the MSSICS and provided continued SSI benefits to Ms. Fabelo while the reconsideration request was pending.

**Plaintiff Liam Beck, on behalf of his minor child, M.B.**

123.    86. M.B. is 10 years old and receives SSI benefits for her severe mental illness. Her local SSA office is the Boro Hall Office in Brooklyn, New York.

124.    M.B.'s family belongs to a religious congregation, where M.B.'s father assists with the accounting. Mr. Beck's name, along with other names, appears on the congregation's bank account.

125.    On June 29, 2015, SSA sent M.B.'s family a notice indicating her SSI benefits would be terminated in August 2015 because M.B.'s family no longer met the financial

eligibility criteria. Specifically, the notice indicated that SSA was counting the congregation's bank account as belonging to M.B.'s family and a resource.

126.     On July 13, 2015, M.B.'s family filed a reconsideration request objecting to the allegations in the notice, and provided SSA with copies of bank statements explaining the congregation's bank account.

127.     M.B.'s family filed the reconsideration request three times and their representative placed six telephone calls to the local SSA office.

128.     On July 31, 2015, SSA notified M.B.'s family that more information was needed to process the reconsideration request.

129.      M.B. did not receive her SSI benefits in early August 2015, as expected, but with legal assistance, M.B.'s family was able to secure her August 2015 SSI benefits later in the month.

130.     Because of SSA's failure to provide continued benefits pending the outcome of the reconsideration, the family was late paying rent and had to borrow money to pay M.B.'s school fees.

**Plaintiff Martha Rivas**

131.     Ms. Rivas receives SSI benefits. Her local SSA office is the Rego Park Office in Rego Park, New York.

132.      On September 8, 2015, she went to her local SSA office, at the invitation of SSA, where she was asked her about a one-time payment of $14,985.00 Ms. Rivas had received from her divorce settlement. Ms. Rivas explained that she no longer had the funds, which were paid in June 2013 and spent by January 2014 on expenses for herself and her children. She was asked to bring proof of the expenditures, such as receipts and bank statements, within 10 days.

133. Eight days later, on September 16, 2015, when Ms. Rivas returned to her local SSA office with her bank statements and receipts, she was handed a letter dated September 9, 2015, indicating that SSA proposed to terminate her SSI benefits effective October 1, 2015. The worker who handed her the letter also took her papers and made copies.

134. A week later, on September 23, 2015, Ms. Rivas returned to the local SSA office to request an update about her case. The worker informed her that there was no record of any documents submitted the prior week. The worker also handed her a Request for Reconsideration form to complete.

135. On September 30, 2015, Ms. Rivas returned the Request for Reconsideration form to her local SSA office, with, for the third time, supporting documents.

136. When Ms. Rivas did not receive her SSI benefits in October 2015, she returned to her local SSA office to inquire about her case. She was given a copy of her Request for Reconsideration, with a date stamp of October 13, 2015, even though she had submitted it on September 30, 2015. She was also provided with a Request for Waiver of Overpayment form to complete and was told to return the waiver request by November 7, 2015.

137. Ms. Rivas returned to her local SSA office on or about November 5, 2015, to return the completed waiver request. However, when Ms. Rivas attempted to submit the form, the SSA worker refused to take it because Ms. Rivas had not attached any receipts to it for her current expenses.

138. Ms. Rivas contacted an attorney and was advised to return to the local SSA office on November 6, 2015, to attempt to file the waiver request. When she returned to the SSA office, Ms. Rivas was told by another worker that she could not physically accept her waiver request.

The worker directed Ms. Rivas to mail the request at the mailbox around the corner.  He also told her that she should not attach any receipts or documents to it.

139.    Ms. Rivas has exhausted her savings. To provide for her urgent needs, she was compelled to reapply for public assistance benefits.  Ms. Rivas lives with her two sons. Her older son, who is 18 and in school, attempted part-time work briefly to help with rent. Her younger son is severely disabled and receives SSI. To keep current in her rent, Ms. Rivas also spends less money on food for herself and her sons.

**Plaintiff Icho Cohen, on behalf of his minor child, S.C.**

140.    S.C. is a 16-year-old girl with a severe neurological disorder. Her local SSA office is the New Utrecht Office in Brooklyn, New York.

141.    S.C. was in receipt of SSI benefits until January 2014.

142.    She lives with her parents and three siblings. Her mother lost her job last year.

143.    On February 14, 2014, S.C.'s father, Mr. Cohen, filed a waiver request at the local SSA office. However, SSA would not provide continuing benefits pending the outcome of an appeal because it believed her family still had excess resources.

144.    The resource was an exempt business loan.

145.    On May 22, 2014, the waiver request was filed by certified mail to the local SSA office.

146.    On June 23, 2014, the waiver request was also filed by certified mail to the SSA Mid-Atlantic Service Center in Philadelphia, in Pennsylvania, because an overpayment notice had been sent to the family from that address.

147.    On September 5, 2014, Mr. Cohen and his representative attended an appointment at the local SSA office. The SSA worker stated that the waiver was never received. Mr. Cohen

attempted to give the worker the waiver request but it was refused on the ground that the worker did not handle overpayment waivers.

148.    In September 2014, the representative filed the waiver request by facsimile and certified mail to the local SSA office.

149.    On October 3, 2014, Mr. Cohen received a letter from the local SSA office for an October 3 appointment about the waiver request. Mr. Cohen tried to reschedule the appointment by telephone due to lack of timely notice, but SSA refused to reschedule the appointment.

150.    On April 2, 2015, the local SSA office informally denied the waiver request. No written waiver denial has ever been received.

151.    On May 24, 2015, a request for reconsideration of the waiver denial was filed at the local SSA office. The reconsideration was also denied orally and no written denial has ever been received. On July 14, 2015, a request for hearing was filed because of SSA's failure to properly process the waiver request and provide continuing benefits.

152.    The family is struggling to provide S.C. with necessities of therapy, educational assistance, and clothes.

**Plaintiff Jessica Valladares**

153.    Ms. Valladares is 18 years old with mental health issues. She began receiving SSI in 2013 and her mother, Martha Penaloza ("Ms. Penaloza"), is her representative payee. Her local SSA office is the Long Island City Office, in Long Island City, New York.

154.    Ms. Penaloza, a native Spanish speaker with limited English proficiency, opened the SSA required bank account for the direct deposit of Ms. Valladares' SSI benefits.

155.    On March 16, 2015, Ms. Penaloza received an overpayment notice, which was only in English, stating that $2,908.00 in SSI benefits were overpaid from November 2014

through February 2015.  Two weeks later, on April 8, 2015, Ms. Penaloza received a second overpayment notice, also only in English, stating that SSA had allegedly overpaid her $10,349.00 in SSI benefits from September 2013 through October 2014.

156.    Ms. Valladares and Ms. Penaloza brought the notices to Ms. Valladares' therapist, who directed them to go to their local SSA office.

157.    Ms. Valladares and Ms. Penaloza went to the local SSA office with the notices to request clarification.  Ms. Penaloza asked SSA to mail her the letters in Spanish so that she could understand them and explain them to her daughter. However, she was informed that SSA mails letters only in English. Ms. Penaloza was provided with an interpreter by telephone but Ms. Penaloza could not understand what the interpreter was saying. Further, Ms. Penaloza was told that an SSA worker would only speak with Ms. Valladares about the overpayment even though Ms. Penaloza was her representative payee.

158.    Ms. Penaloza was given a waiver request form, which she returned to SSA on April 29, 2015.

159.    On July 9, 2015, Ms. Valladares and Ms. Penaloza returned to the local SSA office because they had not received any information about the waiver request.

160.    They were handed an overpayment letter, again only in English, dated May 21, 2015, which stated that SSA could not approve the waiver request. Neither Ms. Valladares nor Ms. Penaloza had previously received a copy of this letter by mail or other means. They were also told that they had missed an appointment in June for a personal conference in order to discuss the waiver request.

161.    That day, Ms. Valladares and Ms. Penaloza filed an appeal of the overpayment determination.

162.    Also in July 2015, Ms. Valladares and Ms. Penaloza received a letter, again only in English, stating that Ms. Valladares' SSI benefits would be reduced 10%, starting in August; however, they also received a letter that Ms. Valladares was no longer eligible for any SSI benefits.

163.    Ms. Valladares received her SSI benefits for August, at a reduced rate, but no subsequent benefits.

164.    Ms. Valladares provided the local SSA office with more information on August 4, 2015.  She was told that her waiver request was still pending.

165.    SSA later corrected itself, finding no overpayment had occurred from September 2013 to December 2014.  SSA had inappropriately counted retroactive her SSI benefits as a resource but these payments are excluded as countable resources for 9 months after the payments are received.

166.    Ms. Valladares' SSI benefits were not reinstated, despite clear proof that she did not have excess resources.

167.    To date, SSA has not issued a final determination on the waiver request.

**Plaintiff Joshua Ryland**

168.    Mr. Ryland is nineteen years old, struggling with mental health issues and a learning disability. His local SSA office is the Flushing Office, in Flushing, New York.

169.    Mr. Ryland lives with his mother, Nadine Abitol, who suffers from Meniere's disease, which causes violent dizzy spells, and severe arthritis, which limits her day-to-day mobility. Ms. Abitol relies on a walker or cane to ambulate. She receives SSI benefits based on her disability

170.    Ms. Abitol is Mr. Ryland's representative payee and manages his SSI benefits.

171.    Mr. Ryland began receiving SSI benefits as a child; however, when he turned eighteen, SSA claimed he no longer qualified for benefits under the adult standards.

172.    Mr. Ryland was, and is in high school, and will continue until he is twenty-two years old.

173.    He is eligible for SSI benefits until age 22, even if his disability ceases, so long as he remains in high school.

174.    In December 2014, Mr. Ryland received a notice from SSA that he was no longer disabled and his SSI benefits would cease in February 2015.

175.    Mr. Ryland continued to receive his SSI benefits, uninterrupted, through May 2015.

176.    His SSI benefits were terminated without notice as of June 2015.

177.    On or about July 16, 2015, Ms. Abitol received an overpayment notice dated July 1, 2015.

178.    She immediately called the local SSA office and was told that Mr. Ryland's SSI benefits could not be reinstated because the ten days in which to file an appeal had passed. Believing she had no options and limited in mobility due to her impairment, Ms. Abitol did not go in person to the local SSA office to discuss the notice.

179.    Ms. Abitol spoke with counsel on July 28, 2015, and learned of her right to appeal the overpayment determination.

180.    On, or about July 29, 2015, Ms. Abitol went to the local SSA office and objected to the determination and the termination of her son's SSI benefits.

**Plaintiff Constantin Kehaya**

181.    Mr. Kehaya, aged 71, receives SSI benefits based on his age.  His local SSA

office is the Uptown Office, in New York, New York.

182. SSA requires Mr. Kehaya's SSI benefits to be directly deposited into a bank account.

183. In May 2014, Mr. Kehaya received two SSI benefit deposits in that same calendar month, one at the beginning of the month and one at the end of the month. He did not receive his SSI benefits in the June calendar month. The SSI deposit in late May was actually his benefits for June.

184. In both August and October 2014, he again received two deposits in a single calendar month – following the same pattern with a benefit received in the beginning of the month and another one received at the end of the month. He did not receive his SSI benefits in September 2014 or November 2014. Instead, the second benefit payment received in August was the benefits for September. Likewise, the second benefit payment received in October was the benefits for November.

185. In December 2014, the local SSA office asked Mr. Kehaya to come in for an interview on January 20, 2015, in order to evaluate his SSI financial eligibility.

186. On January 19, 2015, the day before the scheduled meeting, SSA issued Mr. Kehaya a notice that he had been overpaid SSI benefits for three months, in 2014, because his bank balances in June, September and November 2014 appeared to exceed the $2,000 SSI program resource limit for a single person. SSA considered the second SSI payments received in the same month to be "savings" so that Mr. Kehaya had savings over the resource limit. Had Mr. Kehaya's SSI benefits been paid by SSA in the correct calendar month, the benefits would be "income" and not "savings." This excess amount of "savings" made it appear that Mr. Kehaya was not eligible for any SSI benefits in those months. Mr. Kehaya was informed that the

overpaid benefits would be added to a prior overpayment on his record.

187.    The January 2015 notice informed Mr. Kehaya that SSA would reduce his monthly SSI benefits in order to recoup the overpayment. It did not tell him that he could appeal this reduction in his benefits.

188.    On February 20, 2015, after consultation with counsel, a reconsideration request was submitted, pointing out the errors in the overpayment determination.

189.    In 2013, Mr. Kehaya had a small overpayment caused by a modest annuity that placed him barely over the resource limit.

190.    In 2013, SSA also paid Mr. Kehaya two SSI payments in a single calendar month. SSA also treated the double-month payments as extra "savings" in 2013 and charged Mr. Kehaya with overpayments.

191.    Overall, SSA assessed an overpayment of more than $9,000.

192.    Along the way, Mr. Kehaya requested that the recoupment be limited to $20 a month rather than $73 a month, which SSA agreed to, effective January 2015.

193.    In January 2015, the recoupment rate was automatically reset to $73 a month for the February payment when SSA issued a new overpayment notice to cover the 2014 "overpayments."

194.    Recoupment for the 2014 "overpayments" did not change once the reconsideration request was submitted.

195.    On occasion, multiple SSI benefit payments are issued in a single calendar month. Mr. Kehaya did not request this payment pattern, nor is he told in advance that it will happen. Mr. Kehaya has no control over the timing of his SSI benefit payments.

**Plaintiff Myrna Mercedes Alvarez**

196.    Ms. Alvarez, 59 years old, and receives SSI benefits based on physical impairments including heart disease. Her local SSA office is the Rego Park Office, in Rego Park, New York.

197.    In 2013, SSA assessed Ms. Alvarez with an overpayment.

198.    SSA mistakenly found that Ms. Alvarez had rental income in 2013.   With advocacy, the matter was resolved and SSA's determination reversed.

199.    Months later, in November 2014, SSA issued an overpayment notice on the same issue.   A reduction of benefits took effect immediately without allowing Ms. Alvarez an opportunity to file an appeal prior to the adverse action taking effect.

200.    Again, with the help of counsel, Ms. Alvarez objected to the reduction.   Counsel wrote on her behalf and spoke with the District Manager at the Rego Park office in July 2015.

201.    In November 2015, she received another notice again stating that benefits would be reduced.

**Plaintiff Aron Braver, on behalf of his minor child, R. B.**

202.    R.B. is 8 years old and has developmental disabilities following complications at her birth. Her local SSA office is the Boro Hall Office, in Brooklyn, New York.

203.    In October 2013, R.B. received a settlement from the medical malpractice lawsuit filed on her behalf in 2011.

204.    The malpractice settlement precludes access by R.B. and her parents to the settlement funds until she is 18 years old or has a medical emergency.

205.    R.B.'s parents received a Notice of Planned Action from SSA dated December 15, 2014, to discontinue R.B.'s SSI benefits because of the settlement funds.

206.    On December 24, 2014, R.B.'s parents filed objections by mail advising SSA that R.B. and her parents did not have access to the settlement funds. They included a copy of the court-settled order.

207.    Despite the timely filing of the appeal, R.B.'s SSI benefits were discontinued in January 2015.

208.    R.B.'s parents obtained legal assistance on January 12, 2015. When SSA was asked about the status of R.B.'s parents' appeal, counsel was told that no record existed in the MSSICS but it was likely sitting somewhere on a desk.

209.    The objections and documentation were resent to the local SSA office and an additional follow up call was made. R.B.'s benefits were finally reinstated on January 22, 2015.

210.    Months later, SSA issued a new notice of termination, dated October 9, 2015, stating that R.B.'s benefits would be terminated as of November 2015.

211.    The notice indicated R.B. had been found to be over the resource limit due to funds kept in a separate dedicated savings account.

212.    R.B., as a minor, must have a dedicated savings account for his retroactive SSI benefits.  The dedicated account is excluded as a resource for eligibility purposes.

213.    The dedicated account had been with Capital One Bank until January 2014, when it was transferred in order to secure a higher interest rate.

214.    It appears that SSA thought it had discovered a "new" account and failed to realize that it was actually the dedicated account.

215.    R.B.'s father completed a Request for Reconsideration form and sent it by facsimile, with bank statements, to the local SSA office on October 23, 2015.  This appeal was filed within 15 days of the date of the notice.

216.    R.B.'s father followed up with the local SSA office on October 29, 2015, only to be told that the reconsideration request had not been recorded in the system.  In response, R.B.'s father submitted the documents again by facsimile.

217.    On October 30, 2015, R.B.'s father confirmed that the local SSA office had received the reconsideration request and documents. He was also informed that SSA could not provide continuing benefits because the documents lacked a signed statement from R.B.'s father.

218.    R.B.'s father drafted and signed a statement and sent it by facsimile to the local SSA office.

219.    No SSI benefits were paid to R.B. in November 2015.

220.    In November 13, 2015, a notice to R.B. from SSA indicated the reconsideration request reconsideration had been granted.

221.    Further inquiry to SSA yielded a statement from the local SSA office that R.B.'s November 2015 benefits would be released on December 1, 2015.

## STATEMENT OF CLAIMS

**FIRST CLAIM**

**Plaintiffs Emad Amin, Judy Menczer, on behalf of  E.M.; Sylvia Fabelo; Liam Beck, on behalf of  M.B., Martha Rivas; Icho Cohen, on behalf of S.C.; Jessica Valladares; Joshua Ryland; Constantin Kehaya; Myrna Mercedes Alvarez; and Aron Braver, on behalf of R.B.**

222.     Plaintiffs repeat and reallege paragraphs 1-221.

223.    Plaintiffs' and their children's interest in continuing to receive SSI benefits is a property right covered by the Due Process Clause of the Fifth Amendment to the United States Constitution, which protects individuals from deprivations of life, liberty, and property without due process of law.

224.    SSA has a practice and policy of intentionally and negligently failing to ensure

that its workers in its local offices in New York City in fact document reconsideration requests and waiver requests in the MSSICS, which results in the unlawful reduction or termination of SSI benefits.

225.    SSA's practice and policy of intentionally and negligently failing to ensure that its workers in its local offices in New York City in fact documented plaintiffs' or their children's timely reconsideration requests and waiver requests in the MSSICS caused plaintiffs or their children to suffer substantial and significant harm when their SSI benefits were reduced or terminated and deprived them of their rights to ongoing benefits unchanged pending the determination of their appeal.

226.    The reduction or termination of plaintiffs' or their children's SSI benefits violated their rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, 42 U. S. C. §  1383(b)(1), 20 C. F. R. §§ 416.1336 and 416.1404, and POMS §§ SI 02301.300,  SI 02220.017, and SI 02260.001.

227.    Plaintiffs and their children and other SSI recipients in New York City remain at considerable risk of suffering substantial and significant harm of having their rights violated under the Due Process Clause, the Act, and SSA regulations and procedures unless SSA ensures that its workers in its local offices in New York City in fact document any future reconsideration requests and waiver requests of plaintiffs or their children in the MSSICS in sufficient time to prevent the reduction or termination of their SSI benefits.

**SECOND CLAIM**

**Plaintiffs Emad Amin, Judy Menczer, on behalf of  E.M.; Sylvia Fabelo; Liam Beck, on behalf of  M.B., Martha Rivas; Icho Cohen, on behalf of S.C.; Jessica Valladares; Joshua Ryland; Constantin Kehaya; Myrna Mercedes Alvarez; and Aron Braver, on behalf of R.B.**

228.    Plaintiffs repeat and reallege paragraphs 1-221.

33

229.    Plaintiffs' and their children's interest in continuing to receive SSI benefits is a property right covered by the Due Process Clause of the Fifth Amendment to the United States Constitution, which protects individuals from deprivations of life, liberty and property without due process of law.

230.    As an administrative convenience, SSA intentionally adopted a practice and policy in its local offices in New York City of immediately scheduling the automatic reduction or termination of SSI benefits where it is alleged that the recipient is ineligible for continued SSI benefits or has been overpaid SSI benefits.

231.    SSA's intentional adoption of a practice and policy in its local offices in New York City of immediately scheduling the automatic reduction or termination of SSI benefits where it is alleged that the recipient is ineligible for continued SSI benefits or has been overpaid SSI benefits caused plaintiffs or their children to suffer significant and substantial harm when their SSI benefits were reduced or terminated and deprived them of their rights to ongoing benefits unchanged pending the appeal decision.

232.    The Act and SSA regulations and procedures protect SSI recipients who timely file reconsideration requests or waiver requests from reductions or terminations of their SSI benefits until the reconsideration requests or waiver requests are decided by SSA. 42 U.S.C. § 1381(b), 20 C. F. R. §§ 416.1336 and 416.1404, and POMS §§ SI 02301.300, SI 02220.017, and SI 02260.001.

233.    Plaintiffs and their children and other SSI recipients in New York City remain at considerable risk of suffering substantial and significant harm of having their rights violated in the future under the Due Process Clause, the Act, and SSA regulations and procedures unless SSA discontinues its practice and policy in its local offices in New York City of immediately

scheduling the automatic reduction or termination of SSI benefits where it is alleged that the recipient is ineligible for continued SSI benefits or has been overpaid SSI benefits.

## REQUEST FOR RELIEF

Wherefore, plaintiffs request that this Court enter a final judgment:

(a)     Declaring, pursuant to 28 U.S.C. § 2201(a) and Rule 57 of the Fed. R. Civ. P., that SSA's practice and policy of intentionally and negligently failing to ensure that its workers in SSA offices in New York City in fact documented plaintiffs' or their children's timely reconsideration requests and waiver requests in the MSSICS in a timely manner, in order to prevent the unlawful reduction or termination of their or their children's SSI benefits, violated their rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, 42 U. S. C. §  1383(b)(1), 20 C. F. R. §§ 416.1336 and 416.1404, and POMS §§ SI 02301.300, SI 02220.017, and SI 02260.001;

(b)     Declaring, pursuant to 28 U.S.C. § 2201(a) and Rule 57 of the Fed. R. of Civ. P., that SSA's practice and policy in New York City of immediately scheduling the automatic reduction or termination of plaintiffs' or their children's SSI benefits violates their rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, 42 U. S. C. § 1383(b)(1), 20 C. F. R. §§ 416.1336 and 416.1404, and POMS §§ SI 02301.300, SI 02220.017, and SI 02260.001;

(c)     Granting injunctive relief, pursuant to 28 U.S.C § 2202 and Rule 65 of the Fed. R. Civ. P.,: (a) enjoining SSA from allowing its offices in New York City to fail to document reconsideration requests and waiver requests in the MSSICS; (b) directing SSA to implement a practice and policy to ensure that its offices in New York City in fact document reconsideration requests and waiver requests in the MSSICS in order to prevent the reduction or termination of

SSI benefits; (c) enjoining SSA from allowing its offices in New York City to immediately schedule  the automatic reduction or termination of  SSI benefits ; and (d) enjoining SSA from allowing its offices in New York City to reduce or terminate SSI benefits without first allowing recipients a meaningful right to be heard.

(d)      Granting reasonable attorney fees, and costs and disbursements; and

(e)      Granting such other and further relief as this Court may deem just and proper.

Dated: December 23, 2015
          New York, New York

By: ____/s_____
NEW YORK LEGAL ASSISTANCE GROUP
7 Hanover Square, 18th Floor
New York, New York 10004
Beth E. Goldman, President
Michelle Spadafore, Of Counsel
(212) 613-5024
MSpadafore@nylag.org

By: ___/s_____
ANN P. BIDDLE
QUEENS LEGAL SERVICES
89-00 Sutphin Boulevard, 5th Floor
Jamaica, New York 11435
(347) 592-2214
abiddle@qls.ls-nyc.org
Amy Leipziger
Ian F. Feldman, Of Counsel

*Attorneys for Plaintiffs*