UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
EMAD AMIN; JUDY MENCZER, on
behalf of E.M., a minor; SYLVIA
FABELO; LIAM BECK, on behalf of
M.B., a minor; MARTHA RIVAS; ICHO
COHEN, on behalf of S.C., a minor;
JESSICA VALLADARES; JOSHUA
RYLAND; CONSTANTIN KEHAYA;
MYRNA MERCEDES ALVAREZ; and
ARON BRAVER, on behalf of R.B., a
minor,

                Plaintiffs,

    -against-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security and
FRED M. MAURIN, Regional
Commissioner of Social Security, New
York Region,

                Defendants.
---------------------------------------------------x

**<u>MEMORANDUM AND ORDER</u>**
1:15-cv-7429(FB)

*Appearances:*
*For the Plaintiffs*

BETH E. GOLDMAN
MICHELL SPADAFORE
New York Legal Assistance Group
7 Hanover Square, 18th Floor
New York, NY 10004

ANN P. BIDDLE
Queens Legal Services
89-00 Sutphin Blvd, 5th Floor
Jamaica, NY 11435

*Appearances:*
*For the Defendants*

ROBERT L. CAPERS
EDWIN R. CORTES
United States Attorneys Office
Eastern New York
271 Cadman Plaza East
Brooklyn, NY 11201

EMILIA SICILIA
Urban Justice Center
Mental Health Project
40 Rector Street, 9th Floor
New York, NY 10006

**BLOCK, Senior District Judge:**

Plaintiffs—recipients of Supplemental Social Security Income ("SSI") benefits—bring this action seeking injunctive, declaratory, and mandamus relief against Nancy A. Berryhill,[1] Acting Commissioner of the Social Security Administration ("SSA"), and Fred M. Maurin, Regional Commissioner of Social Security, New York Region. They allege the SSA systematically fails to properly process appeals, causing them and their children to lose, at least temporarily, their proper SSI benefits.

Defendants move to dismiss plaintiffs' First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1), arguing the claims are moot and that plaintiffs lack standing, and 12(b)(6), arguing plaintiffs have failed to exhaust their administrative remedies and failed to state a claim for violation of federal regulations or mandamus relief. Defendants' motion was denied at oral argument, with written decision to follow. This is that decision.[2]

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin, the Acting Commissioner of Social Security at the time the complaint was filed. The plaintiffs have also changed since this case was originally captioned.

[2] At oral argument, the parties also agreed to attempt to resolve the matter informally and notify the Court no later than Feburary 28, 2018 about the status of

# I

## A.    SSI Benefits

"The basic purpose underlying the [SSI] program is to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled [including children] and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110. "[P]ayments are made under conditions that are as protective of people's dignity as possible." 20 C.F.R. § 416.110(c).

SSA periodically reviews an SSI recipient's financial eligibility to receive benefits. This review happens at periodic intervals but may happen sooner if SSA learns of a change in the recipient's financial situation. 20 C.F.R. § 416.204(b). If SSA determines a recipient is no longer eligible for benefits, it terminates benefits and may demand overpaid benefits be returned; however, recipients are due advance written notice before benefits are cancelled. *See* 20 C.F.R. §§ 416.535, 416.558, and 416.570.

When a recipient is noticed that the SSA has made an adverse finding, he or she may file a request for reconsideration, or a request for waiver of overpayment recovery, or both. 20 C.F.R. §§ 416.550, and 416.1336. The timing is critical. If a request for reconsideration is received within 10 days, the recipient will not lose his or her benefits

---

these negotiations, and whether a mediator or special master would help the parties reach a resolution.

until the appeal is resolved. 20 C.F.R. § 416.1336(b). However, plaintiffs allege that, in practice, the benefits terminate even if a request for reconsideration is timely made because SSA employees fail to docket the request.[3]

## B.    SSA's Alleged Failure to Docket Requests

According to plaintiffs, SSA's failure takes many forms.[4]  Sometimes, SSA employees tell a recipient that he or she has no basis to appeal and refuse to accept the request. Sometimes, they wrongly refuse to accept written requests, insisting that the recipient make the request in person (only to be denied in person as well). Sometimes, they accept the request but refuse to file supporting documentation. Sometimes, they take the request in person but fail to file it in the computer system, leaving the request sitting on somebody's desk.

Between 2014 and 2015, the New York Legal Assistance Group ("NYLAG") conducted a study of these failings. The organization found that about half of requests had to be submitted more than once and that repeated telephone calls and legal

---

[3] The SSA uses computer systems to regulate the payment of benefits, including the Supplemental Security Master Record ("SSR"), the Modernized Supplemental Security Income Claims System ("MSSICS"), and a notice retrieval system. According to the SSA Program Operations Manual System ("POMS"), requests for reconsideration and waiver should be documented in MSSICS. POMS SI 04020.020 and 02260.001. According to the FAC, the failure to timely document these requests in MSSICS is the shortcoming that leads to requests for reconsideration and waiver not being considered when terminating benefits.

[4] The parties and applicable regulations interchangeably refer to these requests as "appeals."

representation was often necessary.

Plaintiffs also allege that SSA employees have made the following comments when pressed on the failure to timely docket requests: (1) the request "might be on someone's desk," (2) "I know what the rules are but I am only one person and you have to be realistic," (3) the NYLAG lawyer needed to pressure the employees' supervisors to allot time to docket requests, (4) while the worker understood the urgency, other requests were still waiting to be processed, and (5) no one was available to docket the request because of understaffing.

## C.    The Plaintiffs

The eight plaintiffs each allege that they have been affected by SSA's failure to docket requests. The allegations are laid out in great detail in the FAC; the following is a summary of their experiences.

### 1.    Sylvia Fabelo

Plaintiff Sylvia Fabelo has received benefits since 2013 based on her age. In 2014, she began receiving foster care benefits, which do not count against financial eligibility. On January 15, 2015, she informed the SSA about the foster care benefits. SSA scheduled automatic termination of the SSI benefits unless she could provide additional proof of the source of the foster care benefits. She did so on January 30, 2015, but was turned away at the check-in window and not allowed to submit her evidence. As a result, she did not receive her February benefits. On February 17, 2015,

she received a notice of termination backdated to February 1, 2015, and was told she had been overpaid from September 2014 until January 2015.

On March 20, 2015, Fabelo filed a request for reconsideration. It was not docketed. Her representative called the SSA office seven times between April 1, 2015, and May 4, 2015, but was unsuccessful in docketing her request.

On May 5, 2015, Fabelo and her representative went to the local SSA office and finally secured submission of her request for reconsideration. Her representative contacted the office three times by telephone between May 14 and May 18, 2015. Finally, on May 19, 2015, a favorable reconsideration decision was issued, and her benefits were reinstated on May 27, 2015. However, the SSA failed to issue the improperly withheld benefits from February, March, and April. Her representative finally succeeded in securing her missing benefits on June 24, 2015.

Fabelo relied on her SSI benefits as her sole source of income. During the four months when her benefits were denied, she relied on loans from her daughter to pay rent and fell behind on her bills.

## 2. Judy Menczer, on behalf of her minor child, E.M.

Plaintiff Judy Menczer provides for E.M., a disabled 14-year-old girl who qualifies for SSI. E.M.'s benefits were wrongfully terminated in 2012 and 2014 because the SSA mistakenly treated a business account owned by her uncle as a countable resource. Both mistakes took months to resolve.

In 2015, her benefits were again terminated and an overpayment posted to her SSI record because of the same account. She received two notices, on August 5, 2015, and August 6, 2015, each claiming a different amount of money was due for overpayment. She timely filed requests for reconsideration of both. Neither was docketed.

On August 17, 2015, Menczer filed supporting documentation and an advocacy letter in support of the requests. On August 21, 2015, an SSA worker told her that the requests were not in the system but "might be on someone's desk." The office failed to respond to two follow-up calls.

E.M. did not receive her September benefits. Menczer followed up again and was told there was no appeal on file. On September 18, 2015, an informal conference appeared to resolve the issue in E.M.'s favor. However, on October 7, 2015, the request for reconsideration was denied. At the time of the FAC, E.M. had still not received restoration of her benefits.

**3. Liam Beck, on behalf of his minor child, M.B.**

Plaintiff Liam Beck provides for his minor child, M.B., who receives SSI benefits for her mental illness. On June 29, 2015, SSA terminated M.B.'s SSI benefits. It did so because it improperly treated the money in Beck's religious congregation's bank account as his personal resources because he helped the congregation with accounting. He filed a request for reconsideration. Despite three attempts at filing this request and six telephone calls to SSA, it was never docketed. As a result, M.B. did not receive her

August 2015 benefits on time. After retaining legal representation, M.B.'s family finally secured the benefits in late August 2015. The loss of benefits led the family to miss a rent payment and borrow money to pay M.B.'s school fees.

**4.      Icho Cohen, on behalf of his minor child, S.C.**

Plaintiff Icho Cohen provides for his minor child, S.C., a 17-year-old disabled girl. S.C. received disability benefits until January 2014, when SSA wrongfully scheduled the automatic termination of the benefits due to an exempt business loan made to S.C.'s mother by her grandfather. On February 14, 2014, Cohen timely filed a waiver request, but his request for reconsideration was rejected by the SSA worker. He filed additional requests on May 22 and June 23, 2014, which were not docketed.

On September 5, 2014, Cohen and his representative attended an appointment at the local SSA office. The SSA worker claimed they did not receive his request but refused to accept a proffered request in person. Cohen's representative then filed the request by facsimile and certified mail. On April 2, 2015, the SSA informally denied the waiver request. On May 24, 2015, S.C.'s representative filed a request for reconsideration. It was denied orally. S.C. had not received benefits at the time of the FAC, and an overpayment remained posted to her account.

**5.      Constantin Kehaya**

Plaintiff Constantin Kehaya receives SSI benefits based on his age. On January 19, 2015, SSA sent him a notice that he had been overpaid SSI benefits for three months in 2014 because his bank balances exceeded the $2000 resource limit for a single person. These balances were caused by SSA depositing the next month's benefit check early and counting it as "savings." SSA then applied the "overpaid" benefits to a prior "overpayment" from 2013 that was also caused by SSA misdepositing funds.

On February 20, 2015, Kehaya and his representative submitted a request for reconsideration. SSA failed to docket it. In April 2016, SSA contacted him and asked for a copy of the February 2015 request. He submitted it in May 2016. At the time of the filing of the FAC, he had not received his withheld benefits.

## 6.    Aron Braver, on behalf of his minor child R.B.

Plaintiff Aron Braver cares for his 8-year-old child, R.B, who receives SSI benefits for her disability. On December 15, 2014, R.B.'s parents received a notice that her benefits would be terminated because of exempt settlement funds stemming from a successful malpractice lawsuit. On December 24, 2014, R.B.'s parents filed a request for reconsideration advising that R.B. did not have access to the funds until her 18th birthday. SSA did not docket it, and R.B.'s benefits terminated. On January 12, 2015, R.B.'s representative called the SSA office and was told that no record of the request existed and that it was likely sitting on a desk. After continued pressure on the office, R.B.'s benefits were reinstated on January 22, 2015.

On October 9, 2015, SSA issued R.B. a new notice of termination based on a savings account containing funds for retroactive SSI benefits. The account was required by SSA for minor children and should have been excluded for eligibility purposes. On October 23, 2015, Braver filed a request for reconsideration. On October 29, 2015, he followed up and was told SSA did not docket his request. He sent a second request. On October 30, 2015, he was informed that the office received the second request but that it was missing a required signed statement. He drafted and signed the required statement. SSA still failed to pay R.B.'s November 2015 benefits.

On November 13, 2015, SSA granted the request and informed Braver that the withheld benefits would be paid on December 1. SSA did not pay the benefits. His representative contacted SSA four additional times and finally secured the benefits in late December.

7.     **Nabil Sarga, on behalf of his minor child, K.S.**

Plaintiff Nabil Sarga cares for his 13-year-old child K.S., who receives disability benefits. In April 2014, K.S.'s SSI benefits were improperly terminated due to excess resources based on the deposit of an exempt tax refund into his bank. An overpayment was posted to his record. He filed a new application for SSI benefits, which was granted.

On January 9, 2015, Sarga received notice that his SSI benefits would terminate

due to excess resources because he had again deposited his tax refund into his bank account. K.S. did not receive his February 2015 benefits. On February 2, 2015, Sarga received a notice of overpayments for $2,221.00 and $6,803.00 based on these tax returns. On February 18, 2015, he filed a request for reconsideration. It was not docketed. K.S.'s lawyer followed up on February 20 and 26 and eventually secured docketing of the request. On April 17, 2015, K.S. received a written favorable decision, and the 2015 benefits were reinstated. However, the requests for reconsideration regarding the initial recoupment were never resolved, and SSA continues to recoup 10% of K.S.'s benefits each month.

## 8.    Stavroula Kapeles

Plaintiff Stavroula Kapeles is 24 years old and disabled. On January 12, 2016, she received notice that her benefits were terminated and that she had been overpaid benefits based on her exempt supplemental needs trust.

On January 22, 2016, she filed a request for reconsideration. It was never docketed, and she was not paid benefits in February. On February 3, 2016, an overpayment notice for $20,846.88 was posted to her account. On March 15, 2016, she went to her local office for her reconsideration appointment. However, because her request had never been docketed, she was treated as a walk-in. She waited three hours and resubmitted the request for reconsideration in person. It was not docketed. Additional attempts to resolve the matter failed. She was not receiving benefits at the

time the FAC was filed.

**D.    The Complaint**

On December 31, 2015, plaintiffs filed their first complaint. On July 1, 2016, plaintiffs filed the operative FAC, claiming (1) violation of federal regulations, namely 20 C.F.R. §§ 416.550, 416.1336, 416.1413, 416.557, and 416.570(a); (2) violation of the Due Process Clause; and (3) mandamus. Plaintiffs seek injunctive and declaratory relief and attorneys' fees and costs.

## II

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The "plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

**A    Plaintiffs' Claims are Not Moot.**

"Article III of the Constitution grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of

Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).

However, "disputes capable of repetition, yet evading review" are an "established exception" to the mootness doctrine. *Federal Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). "The exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

This case fits the exception. The alleged failure to docket lasts for weeks or occasionally months, insufficient time to fully litigate a case. *See, e.g.*, FAC ¶¶ 99-106; 128-139. And there is a reasonable expectation that the plaintiffs will be subject to the same failure to docket appeals again. Indeed, many of the plaintiffs allege they have already been subjected to the failure on multiple occasions, sometimes for the same improper reason. For example, E.M. had her benefits terminated three times for the same exempt business account owned by her uncle, and K.S. had her benefits terminated twice based on her father's valid deposit of tax returns. SSA regulations require regular reassessment of benefit eligibility, meaning each of these plaintiffs will be subjected to future review. And the SSA's position in this case—that it has no duty to docket appeals in a timely manner—strongly suggests the failure to docket will

continue. *See* Def.'s Mot. to Dismiss at 23 (". . . the statute and regulations cited to do not impose any obligation on SSA to timely document requests for reconsideration and/or waiver in MSSICS.").

Defendants attempt to moot the case by (1) asserting it has granted all due benefits to plaintiffs since the FAC was filed; and (2) asserting it has implemented reforms that make it more likely that appeals will be timely docketed.

However, the voluntary conduct of a defendant cannot moot a case unless "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)).

Defendants fail to satisfy this heavy burden. Their willingness to reinstate benefits after the lawsuit was filed, if anything, cuts against their mootness argument. *See Granato v. Bane*, 74 F.3d 406, 411 (2d Cir. 1996) ("It is also telling [in finding case was not moot] that . . . the State was willing to reinstate [benefits] as soon as [plaintiffs] filed suit.") And the implementation of reforms, at most, raises a question of fact as to their effectiveness.

Therefore, plaintiffs' claims are not moot.

## B. Plaintiffs Have Standing to Bring Their Claims.

For plaintiffs to have Article III standing, they "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016).

All of plaintiffs' requested relief comes in the form of injunctive and declaratory relief. Defendants challenge only whether plaintiffs have sufficiently alleged injury in fact—specifically, whether they will suffer future injuries that are "certainly impending." *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (holding alleged future harm must be "certainly impending").

Plaintiffs have standing to pursue injunctive or declaratory relief only where they are able "to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)). Past injuries are insufficient "unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.* While the alleged harm must be "certainly impending," *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990), "it is not the materialization of the feared risk itself that must be 'certainly impending.'" *Baur v. Veneman*, 352 F.3d 625, 641 (2d Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564, n. 2 (1992)). Rather, "only the exposure must be imminent . . . ." *Id.* Furthermore, "[t]he possibility of recurring injury ceases to be

speculative when actual repeated incidents are documented." *Ligon v. City of New York*, 288 F.R.D. 72, 81 (S.D.N.Y. 2013); *see also Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 828 (S.D.N.Y. 2011) (holding future harm ceased to be speculative because the threatened unconstitutional search was repeated); *Stinson v. City of New York*, 282 F.R.D. 360, 382 (S.D.N.Y. 2012) (holding future harm ceased to be speculative because multiple summons had been issued without probable cause).

Plaintiffs have adequately alleged that they have been repeatedly subjected to the failure to docket appeals. All of the plaintiffs allege they were personally subjected to this failure on multiple occasions.[5] Plaintiffs also referenced the NYLAG study discussed *supra* at 4-5, which showed approximately half of reconsideration and waiver requests are not timely docketed. SSA employees are aware of this widespread failure, telling plaintiffs that "I know what the rules are but I am only one person and you have to be realistic," that their requests cannot be docketed because of understaffing, and that there were "many more requests like the one just made waiting to be processed" and asking the plaintiffs to pressure the employees' supervisors to set aside time to docket the appeals. Furthermore, under 20 C.F.R. § 416.204, they are certain to undergo regular redeterminations and therefore remain likely to experience SSA's failures in the future.

---

[5] While all Plaintiffs allege they have faced the failure to docket on multiple occasions, "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. and Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006).

Defendants argue that the SSA has changed these practices since the FAC was filed, but this argument is premature. This is a question of fact not appropriate for resolution on the pleadings. Therefore, plaintiffs have successfully alleged future injury sufficient to confer standing for injunctive and declaratory relief.

## III

A party may move to dismiss a claim that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.    Plaintiffs Do Not Need to Exhaust Administrative Remedies.

Defendants argue that plaintiffs failed to exhaust administrative remedies. However, "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976). Failure to exhaust remedies may be excused where "the constitutional challenge . . . [is] 'entirely collateral to [a] substantive claim of entitlement.'" *Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (quoting *Mathews*, 424 U.S. at 330). "Application of the exhaustion doctrine is 'intensely practical.'" *Id.* at 484 (quoting *Mathews*, 424 U.S. at 331, n.11). "The ultimate decision

of whether to waive exhaustion should not be made solely by mechanical application of the [*Mathews*] factors, but should also be guided by the policies underlying the exhaustion requirement" such as allowing the agency to develop a factual record or lend agency expertise to a factual determination. *Id.* at 484-85.

In *Bowen*, plaintiffs challenged the SSA's "unlawful, unpublished policy" of failing to follow SSA regulations governing the fourth and fifth step of disability determination and thereby wrongfully denying benefits. *Id.* at 473. The plaintiffs won a bench trial. *Id.* at 474. On appeal, the defendants argued plaintiffs failed to exhaust their administrative remedies. *Id.* at 477-78. The Second Circuit affirmed. *Id.* at 477. The Supreme Court also affirmed and held exhaustion was unnecessary when the plaintiffs challenged "a systemwide, unrevealed policy that was inconsistent in critically important ways with established regulations" and "there was nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise." *Id.* at 485.


Here, the relief sought is exactly like that in *Bowen*. Plaintiffs' claims are collateral to the substantive process of determining eligibility of SSI benefits. They are not seeking to have their benefits reinstated outside the normal administrative procedure. Rather, they are seeking to have the procedure followed. Under these circumstances, exhaustion of administrative remedies is unnecessary.

**B.** **Plaintiffs State a Claim for Violation of Federal Regulations.**

Defendants argue that plaintiffs' claim for violation of federal regulations fails because (1) "Plaintiffs cite only to alleged violations of SSA's Program Operations Manual System ("POMS")" rather than specific federal regulations; and (2) the federal regulations cited by plaintiffs "do not impose any obligation on SSA to timely document requests for reconsideration and/or waiver in MSSICS." Def.'s Mot. to Dismiss at 23.

The flaw in defendants' first argument is revealed by their second. Plaintiffs' FAC does cite to federal regulations and one statute allegedly violated by defendants: 20 C.F.R. §§ 416.550, 416.557, 416.570(a), 416.1336, and 416.1413 and 42 U.S.C. § 1383(b)(1). The information in POMS is only provided to supplement the regulatory requirements.

Defendants also argue that while the cited regulations provide plaintiffs with the right to file requests, they do not provide them with the right to have those requests effectively noticed. But the regulations provide plaintiffs not only with the right to appeal adverse rulings, but also with the right to continue to receive payments pending an appeal "[i]f appeal is filed within 10 days after the individual's receipt of the notice . . . ." 20 C.F.R. § 416.1336(b).

For a recipient to receive these benefits, the SSA must record the submission of that recipient's appeal within the ten-day period. If not, the recipient loses benefits after

that period has expired. This is exactly what the plaintiffs have alleged happened here—for example, Kapeles alleges she timely filed a request for reconsideration of the SSA's January 12, 2016 notice that her benefits were terminated, but the request was not docketed, and she lost her February benefits. These time-sensitive rights require the appeals to be docketed as recieved.

Therefore, plaintiffs have successfully alleged a violation of federal regulations.[6]

## B.     It is Premature to Dismiss Plaintiffs' Requested Injunctive Relief Barring the SSA's Automatic Reduction or Termination of Benefits.

Plaintiffs seek injunctive relief related to the SSA's automatic reduction or termination of benefits. Defendants assert that this remedy should be dismissed because "Plaintiffs have conceded[] SSA's policies and procedures relating to the automatic scheduling fully comply with due process and do not violate any agency regulations." Def.'s Mot. to Dismiss at 25. While the Court agrees that plaintiffs have conceded the facial validity of these regulations, whether they violate due process as applied is unresolved. Plaintiffs allege the automatic termination effectively denies plaintiffs their rightful benefits because their appeal is not timely docketed.

The most effective solution to this alleged deficiency is likely to fix the timeliness

---

[6] Defendants did not challenge plaintiffs' Due Process Clause claim. Plaintiffs also plead a claim for mandamus relief. However, because mandamus relief is only available if "there is no other remedy available," *Benzman v. Whitman*, 532 F.3d 119, 133 (2d Cir. 2008), and plaintiffs have successfully plead claims for violation of federal regulations and the Due Process Clause, their mandamus claim is dismissed.

of docketing the appeals. However, if the SSA shows such a remedy is impractical due to volume of applications and budgetary restrictions, ending the automatic termination process may be an alternative means to protect plaintiffs' rights, as the plaintiffs would continue to collect benefits while waiting for their appeal to be docketed, and the harm caused by the failure to docket would instead fall on the SSA. Therefore, on the pleadings, it is premature to speculate what form injunctive relief, if any, may take.

## IV

Defendants' motion to dismiss is granted as to the mandamus claim and otherwise denied.

**SO ORDERED**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 15, 2017